

# MASTER CONTRACT

between

## UNITED STATES
## MARITIME ALLIANCE, LTD.
(For and on Behalf of Management)

and

## INTERNATIONAL
## LONGSHOREMEN'S
## ASSOCIATION, AFL-CIO

(For and on Behalf of Itself and Each of Its
Affiliated Districts and Locals Representing
Longshoremen, Clerks, Checkers and
Maintenance Employees Working On Ships
and Terminals in Ports on the East and
Gulf Coasts of the United States)

Effective October 1, 2004 For The Six-Year Term
Expiring on September 30, 2010



# PREAMBLE

**THIS COLLECTIVE BARGAINING AGREEMENT**
made and entered into on the 28th day of June, 2004, by and
between **UNITED STATES MARITIME ALLIANCE, LTD.**
**("USMX")** for and on behalf of its members and any stevedores,
marine terminal operators and carriers which may hereafter
become members of USMX or which may hereafter subscribe to
this Agreement (hereinafter sometimes collectively referred to
as "Management") and the **INTERNATIONAL**
**LONGSHOREMEN'S ASSOCIATION, AFL-CIO ("ILA")** for
and on behalf of itself and each of its affiliated districts and
locals representing longshoremen, clerks, checkers, and
maintenance employees working on ships and terminals in ports
on the East and Gulf Coasts of the United States constitutes the
Master Contract establishing the terms and conditions of
employment for longshoremen, clerks, checkers, and maintenance
employees employed in container and roll-on/roll-off ("ro-ro")
operations at ports on the East and Gulf Coasts of the United
States.

# ARTICLE I
# SCOPE OF AGREEMENT

**Section 1.    Management.**

The multiemployer Management group bound to the Master
Contract consists of the carriers, stevedores, marine terminal
operators, and port associations that are members of USMX; the
carriers, stevedores, and marine terminal operators that are members
of the port associations that are members of USMX; and the carriers,
stevedores, and marine terminal operators that hereafter become
members of USMX or hereafter subscribe to this Master Contract as
well as those carriers and other employers bound hereto by operation
of law.

1

**Section 2.     Recognition.**
Management recognizes the ILA as the exclusive bargaining representative of longshoremen, clerks, checkers, and maintenance employees who are employed on ships and terminals in all ports on the East and Gulf Coasts of the United States, inclusive from Maine to Texas, and the ILA recognizes USMX as the exclusive employer representative in such ports on Master Contract issues.

**Section 3.     Complete Labor Agreement.**
This Master Contract is a full and complete agreement on all Master Contract issues relating to the employment of longshore employees on container and ro-ro vessels and container and ro-ro terminals in all ports from Maine to Texas at which ships of USMX carriers and carriers that are subscribers to this Master Contract may call. This Master Contract as supplemented by local bargaining constitutes a complete and operative labor agreement.

**Section 4.     Local Bargaining.**
The port associations which are bound by this Master Contract will engage in local negotiations on those bargaining subjects left open to local negotiations by USMX and ILA. Local agreements must be consistent with and will supplement the terms and conditions of the Master Contract in the local ports covered by this Master Contract.

# ARTICLE II
# WAGES

**Section 1.     Wage Increases - Current Employees.**
(a)     Employees whose straight-time basic wage rate in effect on September 30, 2004, is more than $21.00 per hour shall receive the following increases in their straight-time basic wage rate:

| Effective Date | Increase |
|---|---|
| October 1, 2004 | $1.00 per hour |
| October 1, 2006 | $1.00 per hour |
| October 1, 2008 | $1.00 per hour |
| October 1, 2009 | $1.00 per hour |

2

port area, the ILA shall retain its work jurisdiction where the work is the work that would have been performed in the marine terminal or port area.

**Section 9.      Work Opportunities.**

The parties agree that any chance of reacquiring the work of stuffing and stripping containers requires a dedicated work force of trained, productive workers hired at compensation commensurate with the local competition and without any restrictive rules. The parties should examine into this subject and all of its conditions.

**Section 10.      Space Charters.**

The ILA has the same jurisdiction over a signatory space chartered vessel as it has over any vessel operated by a USMX member or by a signatory to this Master Contract. Vessels and containers owned or leased by USMX members or by signatories to this Master Contract shall be subject to ILA jurisdiction in each and every port where their vessels may call from Maine to Texas not only on signatory ships but also on non-signatory ships on which their containers may be carried. Containers of non-signatory carriers carried on signatory ships also shall be subject to ILA jurisdiction.

# ARTICLE VIII
# ILA JURISDICTION OVER CLERICAL WORK

**Section 1.      Clerical Work.**

Clerks shall perform all clerical work on container waterfront facilities which traditionally and regularly has been performed by them, including but not limited to work related to the receipt and delivery of cargo, hatchchecking, prestow, hatch sequence sheet, plan clerking, recording of receipt and delivery of containers received or delivered at waterfront facilities, timekeeping, location and yard work, and demurrage recording, which work shall not be removed from the waterfront facility. The input and output of information by computers related to the foregoing work functions shall also be performed by Checkers and Clerks.

11

**Section 2.  Guidelines.**

(a) **Framework.** The members of the Jurisdiction Committee, in order to provide a framework to resolve outstanding issues regarding the jurisdiction of the ILA Clerks and Checkers, have agreed upon the following definitions and the statement of principle that will be used to define and identify the specific functions that fall within the ILA's jurisdiction.

(b) **Statement of Principle.** In applying Article VIII, Section 1 of the Master Contract, members of the Jurisdiction Committee shall be bound by the following principle: Management and the ILA agree that the ILA Clerks and Checkers shall have jurisdiction over each and every function set forth in Article VIII, Section 1 of this Master Contract which is performed on container waterfront facilities on behalf of signatory employers in each and every port covered by the Master Contract, provided that such function was at any time in the past performed by the ILA Clerks and Checkers in that port. It is further understood that clerical work currently performed by state port authorities or government agencies, if discontinued, will fall under the ILA's jurisdiction.

(c) **No Waiver.** Unless there is agreement between the ILA in a local port and an employer in the local port, any deviation from the jurisdiction provisions of the Master Contract shall not constitute a waiver, amendment or rescission of the jurisdiction provisions of the Master Contract.

**Section 3.  Glossary of Terms.**

The following basic list of terms are intended to be descriptive and not all encompassing and are not intended to limit the jurisdiction or functions of the ILA Clerks and Checkers as they exist under local agreements in the various ports covered by the Master Contract:

(a) **Receiving and Delivery** of cargo shall mean checking and/or clerking of all cargo received into and/or out of a container terminal operated and controlled by a USMX member company. The input and output of information related to change of status (*e.g.*, change of vessel, change of discharge port, etc.) once the container is received at the waterfront facility shall also be performed by the

benefits but also any other fringe benefits as agreed to by the local ILA and port association in each of the ports or districts covered by this Master Contract, except that $5.00 per hour worked in each port or district shall be paid to MILA.

### Section 4. Limitation on Contributions.

No man-hour contributions other than those set forth in Article IV, Section 1 of this Master Contract shall be imposed in any port or district except existing contributions in effect on September 30, 2004, which may not be increased during the term of this Master Contract. No tonnage assessment (not in effect on the effective date of this Master Contract) shall be imposed on containerization or ro-ro operations by any local ILA or port association in any port or district covered by this Master Contract during the life of this Master Contract.

# ARTICLE V
# UTILIZATION OF WORK FORCE

### Section 1. New Employees.

(a) New employees shall be required to pass a mandatory physical examination and a drug test as established by Management and the ILA after they are offered employment and before they engage in any services.

(b) New employees shall also be required to pass ability and proficiency tests approved by Management and the ILA and shall also be required to be recertified every two (2) years in the case of equipment operators, clerical employees, and maintenance employees.

### Section 2. Training.

Employees who operate or otherwise handle, or are selected to operate or otherwise handle, wheeled equipment, cranes or other moving equipment or who perform maintenance or clerical work shall receive such training as may be required from time-to-time by Management and shall be subject to such recertification requirements as shall be established by Management and the ILA, including a

5

physical examination designed by Management and the ILA to demonstrate the employee's ability to perform the essential functions of the employee's job.

**Section 3. Flex-Time.**

(a) **Terminals.** Each local port or district must institute a flex-time system at waterfront terminals for the receiving and delivery of containers and chassis and for work associated with these functions with the details of flex-time to be worked out on a local basis in accordance with the following basic principles:

(i) For all hours worked before 8:00 A.M. and after 5:00 P.M., the wage rate shall be 1 and 1/4 times the straight-time basic hourly rate except on Saturdays, Sundays and holidays, when the wage rate of 1 and 1/2 times the straight-time basic hourly rate shall apply.

(ii) The minimum hourly guarantees shall begin at the time the employees begin work.

(iii) After eight (8) hours worked in any day, the overtime rate of 1 and 1/2 times the straight-time basic hourly rate shall apply.

(iv) Starting times and meal hours are local issues.

(b) **Ship Operations.** Any port or district may implement a ship or barge operation flex-time system which shall provide for flexible starting times and shift operations. The minimum hourly guarantees shall begin at the time the employees begin work. Starting times and meal hours are local issues.

**Section 4. Gang Size.**

(a) **Longshore Gang.** A two-employee reduction in the total operation of the longshore gang for container and ro-ro ships went into effect on October 1, 1996, and an additional one-employee reduction went into effect on October 1, 1998. These reductions had to be made from other than drivers and/or crane operators. These reductions shall remain in effect during the term of this Master Contract.

(b) **Feeder Barge Gang.** The same reductions in the minimum gang size set forth in Article V, Section 4(a) of this Master Contract went into effect for a feeder barge gang under the Feeder Barge Agreement, which is limited to barges with a capacity of up to 350 containers. These reductions shall remain in effect during the term of this Master Contract.

(c) **Small Boat Gang.** The same reductions in the gang size set forth in Article V, Section 4(a) of this Master Contract went into effect under the Small Boat Agreement, which is limited to ships with a capacity of up to 500 TEUs. These reductions shall remain in effect during the term of this Master Contract.

**Section 5.    Staffing.**
(a) **Checker.** One (1) checker shall be assigned to a longshore gang.

(b) **LTL Staffing.** The minimum stuffing and stripping gang for loading and unloading containers shall consist of one (1) longshoreman and one (1) checker, who shall work as directed on one or more containers or trucks simultaneously.

**Section 6.    Local Bargaining.**
Subject to the provisions of Article V of this Master Contract, manning, staffing, and the number and use of employees in all crafts shall be the subjects of local bargaining for the purposes of improving port productivity.

# ARTICLE VI
# DRUG AND ALCOHOL PROGRAMS

**Section 1.    Local Plans.**
The drug and alcohol program now in effect in each port and district should include the following provisions:

(a) Every test shall allow for the splitting of the sample. In a positive test the employee would have the right to request a retest done at another approved laboratory.

7